**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JANE DOE, individually and on behalf of all others similarly situated, | : : : | Case No. 1:21-cv-01579 |
| | : | Hon. Joan H. Lefkow |
| Plaintiff, | : : | |
| v. | : : | |
| NORTHWESTERN UNIVERSITY, | : : | |
| Defendant. | : | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

## I. <u>INTRODUCTION</u>

Defendant Northwestern University ("Northwestern") raises a novel argument—that Northwestern is not subject to the Illinois Biometric Privacy Act ("BIPA") because Northwestern is a financial institution for purposes of the federal Gramm-Leach-Bliley Act ("GLBA"), and BIPA exempts financial institutions that are regulated under the GLBA. Notably absent from Northwestern's motion is any basis to conclude the Illinois legislature intended to import the GLBA's expansive definition of "financial institution" into BIPA.

BIPA does not incorporate the GLBA definition of "financial institution" by reference, and Northwestern has not articulated any logical reason the GLBA's extremely broad definition should apply. "The cardinal rule of statutory construction … is to ascertain and give effect to legislature's intent." *Stewart v. Indus. Comm'n*, 504 N.E.2d 84, 86 (Ill. 1987). Northwestern's assumption that the GLBA definition of "financial institution" controls is simply inconsistent with Illinois' statutory construction rules mandating that, where a statute does not define a word or phrase, words have their ordinary meaning and are construed as they are commonly understood. Northwestern is undoubtedly a renowned private institution of higher education, but it most certainly is not a financial institution that the Illinois legislature was making reference to in BIPA, and thus its Motion to Dismiss must be denied.

Northwestern's GLBA focused arguments further erode in the face of BIPA's stated purpose and goals, which are to regulate private entities' use of consumers' biometric information in Illinois. If every private entity subject to the GLBA were *also* a financial institution for purposes of BIPA, as Northwestern argues, then entire industry sectors that likewise offer credit or financing, including airlines, vehicle and equipment manufacturers, retailers, gas stations, telecommunications, healthcare, and insurance providers would be exempt from BIPA as "financial institutions," even when collecting biometric information in a non-financial transaction.

1

This cannot be an appropriate construction because, in underscoring the need for BIPA's privacy protections, the Illinois legislature specifically identified several instances of biometric collection in private industry settings, including at "grocery stores, gas stations and **school** cafeterias." *See* 735 ILCS 14/5(a) (emphasis added). Northwestern is asking the Court to exclude from BIPA regulation the very same private entities and scenarios the Illinois legislature clearly intended to include. Therefore, the Court should construe BIPA's undefined term, "financial institution," according to its *plain and ordinary meaning* and in a manner that furthers BIPA's legislative intent[1].

## II. ARGUMENT

### A. The Court Must Construe "Financial Institutions" Consistent with Its Plain and Ordinary Meaning, Which Does Not Include Universities

The Court should deny Northwestern's Motion to Dismiss and find that Northwestern is *not* exempt from BIPA as a "financial institution or affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 and the rules promulgated thereunder." *See* 735 ILCS 14/25(c). While Northwestern claims it is a private entity subject to regulation under the GLBA, Northwestern is not a "financial institution" or affiliate thereof, as that term is commonly and ordinarily understood or as that term is used in BIPA. Therefore, Northwestern is not exempted from BIPA as a "*financial institution* that is *subject to [the GLBA].*" *Id*. (emphasis added).

---

[1] The plain and ordinary meaning of "financial institution" that Plaintiff argues should apply is also consistent with each and every one of the many definitions of "financial institution" that can be found throughout the Illinois Compiled Statutes, none of which could conceivably be read to apply to universities. See, e.g., 15 ILCS 516/30-10, 20 ILCS 655/12-2(a), 20 ILCS 3501/805-10, 30 ILCS 238/10, 30 ILCS 750/10-2(a), 205 ILCS 605/1, 205 ILCS 616/10, 205 ILCS 635/1-4(aa), 205 ILCS 700/5, 205 ILCS 705/5, 205 ILCS 715/5, 215 ILCS 5/1303, 215 ILCS 159/5, 305 ILCS 5/10-24, 410 ILCS 705/1-10, 720 ILCS 5/29B-0.5, 745 ILCS 48/10, and 775 ILCS 5/4-101(B).

2

"Statutory interpretation starts with the plain meaning of the statute's text." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1093 (N.D. Ill. 2017) (construing BIPA's definition of biometric identifier). In *Rosenbach v. Six Flags Enter. Corp.*, 129 N.E.3d 1197 (Ill. 2019), the Illinois Supreme Court construed the meaning of "aggrieved" for purposes of BIPA, noting that where a statutory term is not defined, "we assume the legislature intended for it to have its popularly understood meaning." *Id.* at 1205.

When determining the plain and ordinary meaning of words, a court may look to the dictionary if a word is undefined in the statute. *People v. Fort*, 869 N.E.2d 950, 953 (Ill. App. Ct. 2007); *see also Marsh v. CSL Plasma Inc.* – F. Supp. 3d –, 2020 WL 7027720 (N.D. Ill. Nov. 23, 2020) (adopting Webster's definition of "patient" to find BIPA healthcare exemption does not apply to plasma donor). BIPA does not define the term "financial institution." *See* 735 ILCS 14/10 ("Definitions"). Nor does BIPA expressly borrow a definition for "financial institution" from the GLBA or another statute, as it did in defining biometric identifiers. *Cf. id.* at § 14/10 ("biometric identifiers do not include donated organs, tissues, or parts ***as defined in the Illinois Anatomical Gift Act***") (emphasis added). Therefore, under rules of statutory construction, the term "financial institution" must be given its ordinarily understood meaning.

"When a court is called upon to determine whether a statutory term has a plain and ordinary meaning, it is appropriate to consult a dictionary." *Bd. of Educ. of Springfield Sch. Dist. No. 186 v. AG of Ill.,* 77 N.E.3d 625, 633 (Ill. 2017) (relying on both Black's Law Dictionary and Webster's Dictionary). Black's Law Dictionary defines "financial institution" as:

> A business, organization, or other entity that manages money, credit or capital, such as a bank, credit union, savings-and-loan association, securities broker or dealer, pawnbroker, or investment company.

3

BLACK'S LAW DICTIONARY 1821 (11th ed. 2019). Merriam-Webster provides a similar definition: "A company that deals with money (as a bank, savings and loan, credit union, etc.)."[2] Not surprisingly, these definitions implicate companies such as national banks or local credit unions. This plain meaning does *not* include educational institutions, oil and gas manufacturers, retailers, vehicle manufacturers, or social media companies as Northwestern's argument contemplates.

Courts interpreting the term "financial institution" have agreed. In *Chicago Mercantile Exch., Inc. v. Tech. Rsch. Grp., LLC*, 721 F. Supp. 2d 785, 803 (N.D. Ill. 2020), the court found the ordinary and customary meaning of "financial institution" was consistent with Barron's Dictionary of Finance and Investment Terms, *i.e.*, an "institution that collects funds from the public to place financial assets such as stocks, bonds, money market instruments, bank deposits, or loans." Similarly, in *In re Meridian Sunrise Vill., LLC*, No. 13–5503RBL, 2014 WL 909219 (W.D. Wash. Mar. 7, 2014), the district court *rejected* the notion that the ordinary meaning of "financial institution" for purposes of a loan agreement included any entity that manages money. The court reasoned, "any individual person could start an LLC online in thirty minutes, and the fly-by-night entity would be a financial institution to which [the debtor] could assign the loan." *Id*. at *4. *See also Pub. Citizen v. Farm Credit Admin.*, 938 F.2d 290 (D.C. Cir. 1991) (finding ordinary meaning of "financial institution" included cooperative bank which provides credit to nonprofit cooperatives). Here, the Court should find that Northwestern is not a "financial institution," and the inquiry should end there. *See People v. Fitzpatrick*, 633 N.E.2d 685, 687 (Ill. 1994) ("If the text bears a plain meaning, then that is the end of the interpretive exercise, and no other interpretive aids should be used.").

---

[2] *See* https://www.merriam-webster.com/dictionary/financial%20institution (last visited May 20, 2021).

Assigning the term "financial institution" its plain and reasonable meaning also prevents the term from being rendered superfluous, as required by another statutory construction rule. *Cassens Transp. Co. v. Indus. Comm'n*, 844 N.E.2d 414 (Ill. 2006) (statutory construction must give each "word, clause, and sentence its reasonable meaning and not rendered superfluous"). According to Northwestern, BIPA exempts *all* entities that have any potential compliance obligations under the GLBA, including colleges and universities. (*See, e.g.* Dkt. 16 at 10-11 (citing Department of Education Letter of Feb. 28, 2020)). If all GLBA-regulated entities are exempt under BIPA, the statutory term "financial institution" takes on an absurd meaning (*see infra*—encompassing the grocery stores, gas stations, and schools that Illinois legislators had in mind) and is rendered superfluous at the same time. Neither result is allowed. If Northwestern's construction of the statute were correct, the legislature could have said a "private entity"[3] subject to the GLBA is exempt from BIPA. But it did not. The Court must construe BIPA in a manner that gives reasonable meaning to its words and gives meaning to each word.

**B. The Court Should Construe the Financial Institution Exemption in a Manner Consistent with Legislative History and BIPA's Remedial Purpose**

If, despite the plain meaning of "financial institution," the Court finds BIPA's wording is ambiguous, it may consider legislative history to resolve ambiguity and determine legislative intent. *Rivera*, 238 F. Supp. 3d at 1098. BIPA's legislative history makes two things clear: (i) BIPA was enacted to regulate the private sector's growing use of biometrics—including such use in *schools*; and (ii) the financial institution exemption was meant to apply to *banks*.

BIPA expressly states legislative findings, including that biometrics are being used in business and security screening sectors and "appears to promise streamlined financial transactions

---

[3] BIPA defines "private entity" as "any individual, partnership, corporation, limited liability company, association or other group, however organized. A private entity does not include a State or local government agency …." 740 ILCS 14/10.

and security screenings." *See* 735 ILCS 14/5(a). The Illinois legislature also sought to address the piloting of biometrics in "new applications of biometric-facilitated financial transactions, including finger-scan technologies at *grocery stores, gas stations, and school cafeterias*." *Id.* (emphasis added). Thus, legislative history supports a plain meaning construction of the term "financial institutions" and this exclusion from BIPA should not be applied to schools, and in other settings, the legislature specifically identified where the collection of biometric information is occurring.[4]

A transcript from the Illinois legislature's May 30, 2008 session likewise supports a plain meaning construction of the term "financial institution," saying the exemption is for federally regulated "banks":

> Senate Bill 2400 creates [BIPA] which will be applicable to private entities doing business in Illinois. … It ***provides exemptions as necessary for*** hospitals, organ donation efforts, licensed fingerprint vendors working with State Police doing background checks and private subcontractors working for a state or a local unit of government and ***banks that are covered under Federal Law***.

Il. H.R. Tran. 2008 Reg. Sess. No. 276 at 249 (May 30, 2008) (emphasis added). Thus, legislative history does not support Northwestern's argument that private colleges and universities are exempt from BIPA regulation or that "financial institution" should be construed to include *any* private entity subject to the GLBA.

In construing BIPA exclusions narrowly, courts have cited BIPA's remedial purpose. *See Robertson v. Hostmark Hosp. Grp., Inc.*, 2019 WL 8640568, at *3 (Ill. Cir. Ct. July 31, 2019) (finding BIPA is a remedial statute); *Burlinksi v. Top Golf USA Inc.*, No. 19-cv-06700, 2020 WL

---

[4] That Northwestern's collection of student biometric information occurred in a testing environment rather than in a school cafeteria is immaterial. Courts interpreting BIPA's legislative history point out that legislators' concerns were broader than any stated example and that "the full ramifications of biometric technology are not fully known." *See Rivera*, 238 F. Supp. 3d at 1098; 735 ILCS 14/5(f).

5253150, at *7 (N.D. Ill. Sept. 3, 2020) (same). In *Heard v. Becton, Dickinson & Co.*, No. 19 C 4158, 2021 WL 872963 (N.D. Ill. Mar. 9, 2021), the Honorable Rebecca R. Pallmeyer interpreted BIPA's so-called "health care exemption" narrowly, reasoning it was unlikely the legislature intended to deprive heath care workers, whose biometric information was captured while operating a medical device, of privacy rights merely because the capture was incidental to patient treatment. *Id*. at *8. Defendant argued BIPA's definition of "biometric identifiers" excluded "information collected, used, or stored for health care treatment, payment or operations under [HIPAA]." In rejecting this argument, the court noted that if the Illinois legislature intended to exclude health care workers from BIPA "there was a much more straightforward means to do so." *Id*. at *8-9.

Similarly, here, if the legislature intended to deny students at private colleges and universities BIPA's protections in all circumstances, even outside the context of receiving financial aid,[5] it could have done so explicitly. It did not. Northwestern is not exempt from BIPA.

C.     **Federal Courts Implicitly Have Rejected Northwestern's Argument That Any GLBA-Regulated Private Entity Is a Financial Institution Exempted from BIPA**

Northwestern's argument cannot be squared with how numerous courts construed BIPA's financial institutions exemption to mean what it says—that only private entities commonly understood to be financial institutions are exempt. Indeed, many GLBA-regulated defendants

---

[5] The GLBA regulates financial institutions' treatment of a consumer's private information and defines "consumer" as one "who obtains or has obtained a financial product or service from a financial institution …." 16 *C.F.R.* §§ 313.1, 313.3(e)(1). Here, Northwestern did not collect Plaintiff's biometric information for purposes of financial aid. It did so during test taking; thus, the GLBA does not regulate Northwestern's conduct—or protect student privacy—in this scenario. As in *Heard*, Northwestern is impermissibly trying to shoehorn itself into a BIPA exception by ignoring both GLBA's limited sphere of regulation (consumer financial transactions) and BIPA's legislative intent.

have faced BIPA liability in federal court, including Facebook[6], Google, Apple, Enterprise Rental, and Southwest Airlines, yet federal courts retained subject matter jurisdiction of those claims. *See, e.g., Miller v. Southwest Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019) (finding "subject matter jurisdiction is the first issue in any case" and that plaintiffs had standing to sue under BIPA); *Rivera,* 238 F. Supp. 3d 1088; *Hazlitt v. Apple Inc.,* No. 3:20-CV-421-NJR, 2020 WL 6681374 (S.D. Ill. Nov. 12, 2020); *Vance v. IMB*, No. 20 C 577, 2020 WL 5530134 (N.D. Ill. Sept. 15, 2020); *Worldlaw v. Enter. Leasing Co. of Chicago, LLC*, No. 20 CV 3200, 2020 WL 7490414 (N.D. Ill. Dec. 21, 2020). These decisions reinforce that BIPA's financial institution exemption should be construed consistent with the plain and common meaning of "financial institution" and the exemption does not give every GLBA-regulated entity a pass. If the financial institution exemption was as broad as Northwestern asserts, federal courts in Illinois would have dismissed numerous BIPA cases for lack of subject matter jurisdiction. They did not.

Defendant attempts to rely on Magistrate Judge Beatty's decision in *Stauffer v. Innovative Heights Fairview Heights, LLC*, 480 F. Supp. 3d 888 (S.D. Ill. 2020), but the Court in *Stauffer* was not asked to and did not engage in a meaningful analysis of the statutory construction of the phrase "financial institution" as is present here. The Court did not need to answer the specific question presented here because the Defendant in that case -- a provider of software to be used to keep track of employees at a trampoline park – could never meet the definition under the ordinary meaning of "financial institution" or the more expansive one created for purposes of the GLBA. In fact, a close reading of the decision highlights the logical fallacy of the interpretation advanced by the Defendant in this case. The *Stauffer* court explicitly found that BIPA's "financial

---

[6] Facebook resolved its BIPA lawsuit on a class-wide basis for $650 million. *See In re Facebook Biometric Info. Privacy Litig.,* No. 15-cv-03747-JD, 2021 U.S. Dist. LEXIS 36801 (N.D. Cal. Feb. 26, 2021).

institution *exemption is not for all financial institutions*" and that the Court examined "*financial institutions subject to BIPA* and those that are exempt under the two part test[.]" *Id.* at 901. But Defendant's argument here renders a situation where ALL financial institutions are exempt and none are subject to BIPA since under their circular interpretation the definition of "financial institution" is incorporated into BIPA from the GLBA resulting in every single one being exempt. Plaintiff's more rational argument – as appears to have been contemplated by the *Stauffer* court – is applying a two-step analysis: 1) is the entity a "financial institution" as that term is ordinarily understood under Illinois law, and 2) is the entity subject to the GLBA. It is only under this type of analysis could a Court conclude that any "financial institutions" would be subject to BIPA or that not all of them were exempt.

The fact is, if the GLBA exemption were interpreted to adopt the FTC's definition of "financial institution," this exception to BIPA would swallow the rule. Given the prevalence of consumer financing, credit, and leasing in the context of retail, travel, telecommunications, and technology, the majority of private sector would no longer be subject to BIPA's privacy protections, even as to "consumers" who have not obtained credit or financing from these private entities.[7] Indeed, publicly available information shows the following non-exhaustive list of private entities offer credit, financing, or leasing and therefore would be considered "financial institutions" for purposes of BIPA, if Northwestern's statutory construction were correct: Facebook, Apple, Amazon, Caterpillar, John Deere, Verizon, ADP, Costco, Target, Walmart,

---

[7] FTC guidance says the GLBA privacy rule applies to a financial institution's collection of personal information only "in connection with" the potential financing or leasing transaction. FEDERAL TRADE COMMISSION, https://www.ftc.gov/tips-advice/business-center/guidance/ftcs-privacy-rule-auto-dealers-faqs (last visited May 20, 2021). Therefore, the GLBA would not require Northwestern to comply with privacy requirements as to its employees or as to students who do not obtain financial aid. GLBA's conduct-based application undercuts Northwestern's argument that it has a blanket exemption from BIPA's consumer protections.

Kroger, Berkshire Hathaway, Home Depot, Enterprise, ExxonMobil, and American Airlines. These private entities include grocery stores, gas stations, and schools—the exemplar private entities the Illinois legislature sought to regulate in enacting BIPA.

D.     **Compliance with FERPA Does Not Justify Exempting Northwestern from BIPA**

Northwestern attempts to justify its expansive construction of BIPA's financial institution exception by citing the "strict" privacy requirements FERPA imposes on Northwestern and other institutions of higher education. (Dkt. 16 at 9.) Northwestern asserts that these FERPA-mandated privacy rules would provide protection for biometric information of its students. (*Id*. at 9.)

This reasoning backfires, however, because FERPA actually *permits* Northwestern to do exactly what Plaintiff alleges Northwestern did in violation of BIPA—namely, sharing student biometrics with Northwestern's remote proctoring contractor, Respondus, Inc., without first obtaining the students' written consent. Indeed, under FERPA regulations, Northwestern was excused from obtaining student consent prior to disclosing Plaintiff's personally identifiable information (including biometric records) to Respondus, Inc., to whom Northwestern outsourced remote test taking, which certainly qualifies as an "institutional service or function." *See* 34 C.F.R § 99.31(a)(1)(i)(B). Thus, Northwestern's reassurance that FERPA's "strict requirements" adequately protects student privacy as to their biometric information is inaccurate and does not support Northwestern's claim that the Illinois legislature intended to exempt colleges and universities from BIPA.

E.     **Adopting Defendant's Proposed Interpretation Could Render BIPA Invalid**

The Illinois Supreme Court indicated that the fundamental purpose of BIPA is to protect persons from "risks posed by the growing use of biometrics by businesses and the difficulty in providing meaningful recourse once a person's biometric identifiers or biometric information has been compromised." *Rosenbach*, 129 N.E.3d at 1206. If that is to be the purpose of this law, the

exclusion of the entire financial industry and broad sections of the retail economy that would result from Defendant's interpretation of the statute is irrational and improper. There is no logical purpose to eliminate BIPA protections for customers and employees of such entities.

Early versions of the law omitted any reference at all to financial institutions. *See* Illinois Senate Journal, 2008 Reg. Sess. No. 147; Illinois Senate Journal, 2008 Reg. Sess. No. 140. There is limited legislative history explaining why the change occurred to include the language at issue here. The only history suggests that banks would be exempt. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276. The specific need to avoid the statute placing a burden on banks is actually well founded on valid preemption concerns because federal law does preempt state laws that significantly interfere with the powers of national banks. *See, e.g.*, *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25 (1996) (the National Bank Act of 1864 preempts state laws that "significantly interfere" with a "national bank's exercise of its powers" which lower courts have applied to hold a wide variety of state laws preempted).

It is a fundamental rule of statutory construction that courts are required to construe a statute in a constitutional manner where reasonably possible. *Wade v. City of N. Chicago Police Pension Bd.*, 877 N.E.2d 1101, 1115-16 (Ill. 2007). Plaintiff's reasonable interpretation of the language contained in BIPA is consistent with the legislative intent and the Illinois constitution. Defendant's interpretation could create a situation where BIPA could be rendered wholly invalid as special legislation in violation of the Illinois Constitution.

Under Illinois law, "[t]he special legislation clause expressly prohibits the General Assembly from conferring a special benefit or exclusive privilege on a person or a group of persons to the exclusion of others similarly situated." *Best v. Taylor Mach. Works*, 689 N.E.2d 1057, 1069 (Ill. 1997). Applying the exclusion as Defendant argues would have BIPA confer a special benefit on certain entities that fall within the much broader definition of "financial

11

institutions" under the GLBA that would create an arbitrary and patently unfair disparity between similarly situated businesses.

For example, the GLBA includes under its definition of "financial institution" any "retailer that extends credit by issuing its own credit card directly to consumers[.]" *See* 16 CFR 313.3(k)(ii). Accordingly, following Northwestern's interpretation would lead to major national gas station operators such as Exxon Mobil, Shell, and BP all being excluded from BIPA because they all offer branded credit cards for use by their customers. But a smaller local or regional gas station operator without such a branded credit card would still be subject to the full range of restrictions designed to protect consumer biometric information. There is simply no rational reason for creating a scenario that would burden small local gas stations while allowing the larger multinational entities to use biometric authentication and verification equipment without any need for wading through the consent and disclosure framework put in place by BIPA.

Such an outcome is absurd. The legislative history evidences that the statute was created specifically to address an issue concerning the bankruptcy of an entity called Pay By Touch, which allowed consumers to use biometric data to effectuate transactions. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276. BIPA provides that "[a]n overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information." 740 ILCS 14/5(d). BIPA includes the specific legislative finding that "[m]ajor national corporations [are using] biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." Id. at 14/5(b). It makes no sense that the very entities that the statute was designed to

regulate would then be excluded through the misapplication of an extremely broad and overreaching definition of the term "financial institution" that was not expressly set forth[8].

The Illinois constitution provides that the "General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." Ill. Const. art. IV, § 13. This clause "specifically limits the lawmaking power of the General Assembly." *Best*, 689 N.E.2d at 1069. In short, "the purpose of the special legislation clause is to prevent arbitrary legislative classifications that discriminate in favor of a select group without a sound, reasonable basis." *Id.* at 1069-70. The analysis conducted in evaluating a special legislation challenge is essentially the same as an equal protection challenge. *See id.* The two concepts are flip sides of the same coin. *See Cnty. of Bureau v. Thompson*, 564 N.E.2d 1170, 1177-78 (Ill. 1990).

In evaluating a special legislation challenge, courts engage in a two-step inquiry: (i) "first whether the statutory amendments discriminate in favor of a select group and," (ii) second, "if so, whether the classification created by the statutory amendments is arbitrary." *Allen v. Woodfield Chevrolet, Inc.*, 802 N.E. 2d 752, 758 (Ill. 2003). If a law is impermissible special legislation, a Court must hold that it is void. *See, e.g., id.* at 764-765.

Applying the definition advanced by Defendant would result in the creation of special classifications that would violate the rational basis test as it is in no way related to the goal sought to be achieved by the statute. *See Best*, 689 N.E.2d at 1071 ("[W]e must determine whether the

---

[8] The type of absurd outcomes that would result from adopting the GLBA's definition of "financial institutions" include the fact that retailers and gas stations with their own branded credit cards are only subject to privacy and disclosure obligations for their customers that use those credit products but are not required to make such disclosures to their many other customers who pay using cash or other credit cards or their own employees. Under Defendant's preferred interpretation, these other non-credit customers and employees can have their private biometric data gathered and exploited without the protection of BIPA or the GLBA. The legislature plainly did not intend that kind of outrageous result.

classifications created by section 2–1115.1 are based upon reasonable differences in kind or situation, and whether the basis for the classifications is sufficiently related to the evil to be obviated by the statute."); *Bd. of Educ. of Peoria Sch. Dist. No. 150 v. Peoria Fed'n of Support Staff*, 972 N.E.2d 1254, 1260 (Ill. App. Ct. 2012) ("[T]he statute must be upheld if the court can reasonably conceive of any set of facts that justifies distinguishing the class the statute benefits from the class outside its scope.") (internal citations and quotations omitted). This is particularly so where it is incontrovertible that Defendant's interpretation leads to the natural conclusion that major national gas stations end up being excluded where they were amongst the primary motivation in passing BIPA to protect consumer biometric data used to effectuate financial transactions at their places of business. This would result in the precise kind of "arbitrary application to similarly situated individuals without adequate justification or connection to the purpose of the statute" that the Illinois Supreme Court has historically struck down. *Bd. of Educ. of Peoria Sch. Dist. No. 150 v. Peoria Fed'n of Support Staff, Sec./Policeman's Benev. & Protective Ass'n Unit*, 998 N.E.2d 36, 52 (Ill. 2013) (striking down legislation as "irrational" and contrary to its own fundamental purpose to place an arbitrary date restriction on the persons to whom the law applied).

F. **Alternatively, the Court Must Deny Defendant's Motion to Dismiss Because the Record Does Not Show Northwestern Is a Financial Institution for Purposes of GLBA Or That Northwestern Is Subject to the GLBA**

Alternatively, if the Court eschews plain meaning construction and finds that, for purposes of BIPA, financial institutions may include private colleges and universities, Northwestern's Motion to Dismiss still fails because the Court cannot conclude as a matter of law that Northwestern is both a "financial institution" and "subject to GLBA regulation." *See Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1053 (Ill. 2006) ("cause of action should not be dismissed

… unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery").

Northwestern cites FTC rulemaking and Department of Education publications as definitive proof that all institutions of higher education are deemed financial institutions for purposes of GLBA and regulated thereunder. (Dkt. 16 at 8-12.) However, FTC regulations are clear that not every institution of higher education is also a financial institution subject to GLBA. Mere industry guidance, like Northwestern has offered, telling colleges and universities to comply with GLBA does not definitively establish that Northwestern engages in GLBA-regulated lending activities. On this record, the Court cannot conclude Northwestern is a financial institution regulated under the GLBA.

Similarly, Northwestern has not established as a matter of law that Northwestern, as a private university, is "subject to the GLBA." 740 ILCS 14/25(c). Case law actually calls into question Northwestern's GLBA argument and says institutions of higher education are exempt from GLBA regulation. In *New York State Bar Ass'n v. Fed. Trade Comm'n*, 276 F. Supp. 2d 110, 114 (D.D.C. 2003) (*aff'd* by D.C. Cir. 2005), in ruling on the New York Bar's challenge to regulation under the GLBA, the district court cited the GLBA implementing regulation, 16 C.F.R. § 313.1(b), as "granting an exemption to institutions of higher education that comply with FERPA" and confirmed "***the Commission has already granted an exemption to institutions of higher education*** that comply with [] FERPA." *Id*. (emphasis added).

### III. <u>CONCLUSION</u>

Expanding BIPA's financial institution exemption to every private entity regulated under the GLBA would be contrary to the legislature's stated purpose and intent. Defendant's Motion must be denied.

15

Dated: June 14, 2021 Respectfully submitted,

/s/ **Brian K. Murphy**
Brian K. Murphy (6225697), Trial Attorney
Joseph F. Murray
Jonathan P. Misny
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: (614) 488-0400
Facsimile: (614) 488-0401
Email: murphy@mmmb.com
Email: murray@mmmb.com
Email: misny@mmmb.com

Mary C. Turke
Samuel J. Strauss
Turke & Strauss, LLP
613 Williamson Street, Suite 201
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423
Email: mary@turkestrauss.com
Email: sam@turkestrauss.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510
Email: anthony@paronichlaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, hereby certify that on June 14, 2021, I caused the foregoing to be filed via the Court's CM/ECF filing system, which will effect service on all counsel of record.

/s/ **Brian K. Murphy**
Brian K. Murphy

16