# EXHIBIT 2

```
 1        IN THE CIRCUIT COURT OF THE 18TH JUDICIAL CIRCUIT
                    DU PAGE COUNTY, ILLINOIS
 2
         JANE DOE, individually and on    )
 3       behalf of all others similarly   )
         situated,                        )
 4                                        )
                   Plaintiff,             )   20 L 1400
 5                                        )   (Motion)
             -vs-                         )
 6                                        )
         ELMHURST UNIVERSITY,             )
 7                                        )
                   Defendant.
 8

 9

10                     REPORT OF VIDEOCONFERENCE PROCEEDINGS

11       had at the HEARING of the above-entitled cause, before

12       the Honorable BRYAN S. CHAPMAN, JUDGE OF, DuPage

13       County, Illinois, recorded via Zoom and transcribed by

14       TRINA M. SPIZZIRRI, Certified Shorthand Official Court

15       Reporter, commencing on the 18th day of NOVEMBER, 2021.

16       PRESENT:

17
             BRIAN K. MURPHY,
18
                   appeared on behalf of the Plaintiff;
19

20           MR. CHRISTOPHER F. ALLEN,

21                 appeared on behalf of the Defendant.

22

23

24
```

1         THE COURT:  All right.  Good morning, everyone.

2  This is courtroom 2010.  This is 20 L 1400, Doe versus

3  Elmhurst University.

4         Do the parties want to go ahead and identify

5  themselves for the record?

6        MR. MURPHY:  Good morning, your Honor.

7         Brian Murphy on behalf of the plaintiffs.  In

8  my office with me as well is Jonathan Misney (sic).

9        MR. ALLEN:  Good morning, your Honor.

02:38PM 10         Christopher Allen on behalf of Elmhurst

11  University.  My colleague, Christopher Dean, (sic) is

12  with me as well.

13        THE COURT:  Ms. Olivieri, are you here to observe

14  or are you part of the case in any way, shape, or form?

15        MS. OLIVIERI:  I'm just here to observe, judge.

16        THE COURT:  Okay.  Thanks very much.

17         Okay.  We are here on Elmhurst's motion to

18  dismiss.  Thank you for the courtesy copies.  I've had

19  a chance to review everything.  I've had a chance to

02:39PM 20  look at the New York State Bar case as well.

21         Mr. Allen, it's your motion.  I'll let you go

22  ahead and make your record as you like.  Mr. Murphy, I

23  may have some questions for the parties.  Let me just

24  say I think it's worth pointing out, and I think this

1    goes without saying on some level. You know, the Court

2    is going to have to make a decision one way or another

3    on this. And at some point, whichever way the Court

4    goes, another Court may disagree, and that's life. So

5    the Court is going to do it's level best to get this

6    one right, and we'll see where we land. But I am

7    interested in the parties' remarks today. And I look

8    forward to an enlightening conversation here this

9    morning.

02:42PM  10         And, again, I may ask some questions, but I

11   certainly want to let you make your record.

12         Mr. Allen, you may proceed.

13      MR. ALLEN: Thank you, your Honor.

14         I know, as you said, you read everything so I

15   just want to briefly highlight three main points. The

16   first is the relevance standard which is whether

17   Elmhurst is significantly engaged in financial

18   activities. And that standard comes directly from the

19   implementing regulations and specifically 16CFR313.3K1.

02:43PM  20   Plaintiff makes an argument in their brief that

21   Elmhurst business is education, not financial

22   activities. But that isn't the relevant question under

23   the implementing regulations. The relevant question is

24   simply whether Elmhurst significantly engages in

1    financial activities.

2         The second point I would like to make, your

3    Honor, is that it's not disputed that Elmhurst is

4    actually regulated by the GLBA.  We presented

5    undisputed evidence that the Department of Education

6    monitors Elmhurst for GLBA compliance, that Elmhurst is

7    audited for GLBA compliance, and that the Department of

8    Education has specifically corresponded with Elmhurst

9    about GLBA compliance issues and has reminded Elmhurst

02:46PM 10   that failure to comply with the GLBA could jeopardize

11   its ability to participate in student loan programs.

12   And that determination is also backed up by a variety

13   of other evidence including the Dear Colleague letters

14   that the Department of Education has issued to colleges

15   and universities reminded them that they need to comply

16   with the GLBA.  Obviously, the FTC's final rule itself

17   which specifically rejected our request for an

18   exemption for colleges and universities and then the

19   actual financial activities that Elmhurst engages in

02:49PM 20   which include, you know, being involved in every step

21   of the process by which students borrow 25 million

22   dollars a year in student loans and also personally

23   serving as the lender of millions of dollars of federal

24   Perkins loans over the years.  And Elmhurst had an

1   active Perkins loan portfolio of more than a million

2   dollars as recently in this year.

3           So we don't think there is any reasonable

4   dispute about whether Elmhurst is actually subject to

5   the GLBA, and we think it's the kind of easily-proved

6   issue that's appropriate for resolution on a 2-619

7   motion.

8           And the final point I would like to make,

9   your Honor, is just -- I won't (sic) exercise what it

02:52PM  10   is plaintiff is asking this Court to do. The FTC

11   promulgated its final rule two decades ago and since

12   that time an entire regulatory scheme has built up

13   around it.  As I mentioned, the Department of Education

14   has reminded colleges and universities that they need

15   to comply with this provision.  It monitors them for

16   compliance.  Colleges and universities have built up

17   compliance programs around it, and plaintiff is

18   essentially asking the Court to throw that entire

19   scheme out or at least to call it into serious doubt

02:54PM  20   and to leave a lot of confusion as to whether colleges

21   and universities still are or are not subject to the

22   GLBA.  And the only case plaintiff really cites in

23   support of that proposition is the New York State Bar

24   case which for the reasons we set forth in our brief we

1    believe supports us and not the plaintiff.

2            And with that, your Honor, I'm happy to

3    answer any questions the Court may have.  But we do

4    think that this is ready for resolution and should be

5    dismissed.

6        THE COURT:  Mr. Allen, do you believe the Court

7    should apply -- are you -- is Elmhurst asking the Court

8    to apply Chevron Deference to the FTC's ruling?

9        MR. ALLEN:  I certainly think that it is entitled

02:56PM 10   to Chevron Deference.  It was the product of formal

11   notice and comment rule making.  The FTC obviously did

12   receive specific comments on this question which it

13   considered and rejected and did provide an actual

14   reason for its determination which is that many, if

15   not, all colleges and universities are engaged in

16   significant student lending activities.  And so we do

17   think that that determination is entitled to Chevron

18   Deference unlike, for example, the opinion letter in

19   the New York State Bar case which was not the product

02:58PM 20   of formal notice and rule making thus was not entitled

21   to Chevron Deference.

22       THE COURT:  You know, my administrative law class

23   in law school focused more on nuclear power.  And so

24   it's not nuclear power, but I haven't had a chance to

1    engage in Chevron Deference sort of the red-headed

2    stepchild of setting confirmation hearings.  All sorts

3    of legal doctrines get slammed and Chevron Deference

4    sometimes gets referenced every so often if you are up

5    late enough and you watch C Span and committee

6    hearings.

7              Let me ask you about the final -- the nature

8    of the final rule here that came out, the May 2000

9    final rule.  We disagree -- the commission disagrees

03:01PM 10   that they are not financial institutions.  And as we

11   know, BIPA says, any financial institution that is

12   subject to GLBA is exempt under this statute in any

13   way, shape, or form.  Is it your position -- I guess it

14   kind of goes without saying, is it your position that

15   if the Court finds the FTC final rule persuasive that

16   ends the inquiry.

17        MR. ALLEN:  I believe that it certainly would be

18   sufficient, your Honor.  I don't think that the Court

19   needs to find that this is --

03:02PM 20        THE COURT:  Let me rephrase that.  That for

21   purposes of colleges and universities, it ends the

22   inquiry as to whether or not colleges and universities

23   are financial institutions for purposes of GLBA.

24        MR. ALLEN:  I believe that is sufficient, your

1    Honor --

2         THE COURT:  A separate question about is Elmhurst

3    factually in that world.  But do you agree that that

4    would end the inquiry?

5              And, Mr. Murphy, let me just ask you a

6    response there.  Would you agree that if the Court

7    found that a final rule persuasive as to the nature of

8    colleges' and universities' relationships, the GLBA.

9         MR. MURPHY:  No.  I would, your Honor, because,

03:04PM 10   again, if you look at what the FTC said they said many,

11   if not all, appear to be significantly engaged and then

12   that's why we're back into this quandary in terms of,

13   okay, what does it exactly mean to be significantly

14   engaged?

15             Again, and I'll let Mr. Allen finish with

16   that but in the answer to your question, that would be

17   our position.

18        THE COURT:  What's your response to that?  It's a

19   federal rule, but there is some space there.

03:05PM 20        MR. ALLEN:  Your Honor, what I would say there is,

21   you know, as the Court knows, there is a specific FERPA

22   exemption that is in there which would not be necessary

23   if, you know, there were significant doubt as to

24   whether colleges and universities, you know, were

1    otherwise subject to the GLBA.  You wouldn't need to

2    say that to the extent you are complying with FERPA,

3    you are also complying with the GLBA if there was a

4    significant open question as to whether the GLBA

5    applied to colleges and universities.  And so I think

6    that that does reflect a clear intent to subject

7    colleges and universities.

8        THE COURT:  You know, Mr. Murphy, one thing I

9    believe I inquired with you about or both parties

03:13PM 10   perhaps at one of our earlier hearings is whether or

11   not, you know, this literally may just be an issue

12   where the legislature has to fix this.  This may not be

13   what was intended, but there may just be an issue here.

14       MR. MURPHY:  Your Honor, if I might --

15       THE COURT:  I want to lead you to something else

16   here, but I want you to --

17       MR. MURPHY:  Well, I find it interesting that

18   we're talking about, we're talking about an exception

19   to BIPA to which colleges and universities are not

03:15PM 20   specifically mentioned which makes reference to a

21   federal statute which, again, they are not specifically

22   mentioned.  They are not specifically covered.  Your

23   Honor, I pointed out, you know, the original

24   Gramm-Leach-Bliley Act is 145 pages.  You know, and

1   it's got many, many provisions.  It goes on and on.

2   But it's interesting to note, your Honor, in those 145

3   pages, there is not a single mention of a college of a

4   university, of a school, of a student, or a FERPA.

5   It's very clear that those weren't things to be covered

6   by this statute.  And that's why -- again, we go back

7   to the plain language of the statute which is, you

8   know, the FTC can't make rules creating sort of new

9   avenues of the law.  They can engage in rule making,

03:17PM 10  but the law itself, as we point out, repeatedly says a

11  financial institution is someone who is in the business

12  of engaging in financial transactions.  That's

13  critical.

14      THE COURT:  Let me engage you on that because

15  there was a footnote, I believe, in defendant's reply

16  about whether or not, and I'm not suggesting that this

17  is dispositive in the Court's mind, but it strikes me

18  that there is at least an interesting question about

19  whether or not plaintiff in this case has the kind of,

03:18PM 20  you know, for lack of a better term, standing to

21  address whether or not the FTC overstepped their bounds

22  or simply went outside the authority promulgated to it

23  with respect to GLBA.  In other words, you might be

24  right, but that's a conversation for different day.

1      MR. MURPHY:  But, your Honor, what we're talking

2  about is what did the Illinois legislature mean when

3  they provided this exemption.  Who does this exemption

4  cover?  Right.  So at the end of the day, you know,

5  that's this Court's decision to make, and we have

6  standing to make that argument.  The idea that, you

7  know, were not -- again, if the Court rules here for us

8  all that happens is that BIPA applies to colleges.  It

9  doesn't have the affect.  Obviously, the Court doesn't

03:20PM  10  have the jurisdiction, right, to sort of set aside

11  whatever the FTC did.  But, certainly, the Court has

12  the authority to set in Illinois law what the exemption

13  for BIPA means.  And so that's how I would respond to

14  it.  I think that's a little bit of a red herring in

15  terms of, you know, procedurally, we're not seeking to

16  strike anything down.  We're saying if you just follow,

17  you know, the express language of BIPA through the GLBA

18  that the exemption doesn't apply to colleges and

19  universities.

03:23PM  20      THE COURT:  Let me direct you, Mr. Murphy, and I'm

21  happy to let you make your record as well.  But I'm

22  particularly curious if your open to answering a

23  question I have.  Defendant's reply at seven, and I'm

24  just going to read you the paragraph, and I'll invite

1    your response to this.  And there is pages seven and

2    eight of what I'd like your responses to, and we'll

3    start with page seven.  And this goes to the third

4    point raised by Mr. Allen.  The practical effect of

5    plaintiff's argument would be to create a situation in

6    which Elmhurst is actually subject to the GLBA and must

7    comply with its requirements or lose access to student

8    loan programs but is, nevertheless, not subject to GLBA

9    for purposes of 1425C of BIPA.  That would be an

03:26PM 10    untenable result and one that is not supported by the

11    text of either the GLBA or BIPA.  Alternatively,

12    plaintiff is asking this Court to throw out an entire

13    regulatory framework that has been in place for 20

14    years leaving colleges and universities unsure of

15    whether GLBA still applies to them and whether such a

16    decision has broader implications.  Well, I invite your

17    response to that.

18        MR. MURPHY:  I actually I sort of noted that

19    provision in their brief as well.  But I sort of found

03:28PM 20    it somewhat ironic what they're complaining about is

21    having to be over protective of students' privacy

22    information.  There is no inconsistency between the

23    frameworks of -- let's remember, they comply with GLBA

24    by complying with FERPA, right, so they have to protect

students' educational information.  That's something
they should be doing.  In BIPA, again, requires them to
maintain without the necessary policies and consent
student biometric information.  There is nothing sort
of challenging or inappropriate about that.  In fact,
you know, when you look at the GLBA, right, it
specifically says that nothing in there is supposed to
over take more restrictive state statutes.  So, for
instance, there could be state statutes that actually
apply to legitimate financial institutions that require
additional requirements beyond the GLBA, and the
statute sort of invites that and welcomes that.  So
forgive me if I'm not particularly sympathetic to the
idea that the result of them not being a financial
institution for purposes of the BIPA exemption means
they have to be more cautious about students' privacy
and protecting their information.  That's something
that I think both the Illinois legislature and Congress
actually wanted, and it's certainly something that I
think their students would want.

THE COURT:  Is it fair, Mr. Murphy, to think that
1425C could be read to intend to avoid a preemption
issue?

MR. MURPHY:  It's certainly I suppose -- yes.

1   That's certainly possible.  Obviously, as we know, I
2   think from our prior briefing, there is no preemption
3   issue here because, again, in the statute the GLBA it
4   specifically says it does nothing as it relates to
5   allowing for more restrictive state statutes.  And it
6   specifically says it's not intended to do that.  When,
7   again, we don't have preemption issues here because
8   when you get to the GLBA, you know, as we said, a
9   university or college is not subject to the Bank
03:34PM 10   Holding Act, right, they can't -- they're not -- they
11   don't fall under that.  In fact, as I think we pointed
12   out in our brief, you know, a bank could never own a
13   college or university.  It's not one of the things they
14   are allowed to own.  And I think that's also important
15   to remember, your Honor, why the GLBA exists, why it
16   came into existence in the first place was, you know,
17   as a result of the lowering of the barriers between
18   banks and non banking activities allowing them to get
19   into things like selling insurance, engaging in
03:36PM 20   securities trading, things of that nature.  That's what
21   brought around this statute to begin with at its core.
22   And so that's why, you know, I think a lot of the
23   issues they raise sort of are just not on point when it
24   comes to this particular circumstance.

1    THE COURT:  Mr. Allen -- I have one more question

2    for you, Mr. Murphy.  But I'm going to give Mr. Allen a

3    chance to respond to your remarks there.

4    MR. ALLEN:  Sure, your Honor.

5    With respect to the question about whether

6    Elmhurst is somehow complaining about having to comply

7    with two statutes, I would just like to focus the Court

8    back on the language of the BIPA exemption which says

9    that a financial institution or an affiliate of a

03:38PM 10   financial institution that is subject to the GLBA, that

11   BIPA does not apply in any manner to such an

12   institution.  And so the question is not competing

13   obligations or anything like that.  The question is

14   just under the statute is Elmhurst subject to the GLBA,

15   and that is determined by looking to the FTC

16   regulations, to look into the statute, to look into the

17   FTC regulations, to look into how regularly we should

18   actually approach this and, you know, by suggesting

19   that, you know, this Court can somehow determine that

03:40PM 20   the exemption does not apply but not undermine the

21   fundamental regulatory scheme, I don't see how that's

22   possible given that the exemption just asks are you

23   subject to the GLBA and that is determined by looking

24   at the regulatory scheme by looking at the regulations

1    that the FTC has promulgated.

2              Second, on the point as to why the GLBA

3    exists, the GLBA exists to ensure that institutions

4    that collect a lot of financial information about their

5    customers, banks, or others are properly protecting

6    that information that is certainly a concern that

7    applies to colleges and universities given that, you

8    know, as we pointed out, they are heavily involved in

9    every aspect of the student lending process and

03:41PM 10   collected a lot of information in connection with that.

11   And it was certainly reasonable of the FTC to say the

12   GLBA protection should extend that far given the types

13   of activities that colleges and universities are

14   engaged in and the types of information that they

15   acquire as part of that process.

16        MR. MURPHY:  Your Honor, if I could quickly rebut

17   that one point.

18        THE COURT:  One second.  I want to hear it.  There

19   is something I want to ask you about.

03:42PM 20             Go ahead.

21        MR. MURPHY:  I just want to point out, the FTC

22   didn't say they have to comply with the GLBA.  The FTC

23   said if you comply with your preexisting FERPA

24   obligations, we'll deem you to have sort of complied

1    with the GLBA.  And so that's again why we're sort of,

2    in essence, punting on the issue because they didn't

3    actually make them subject to the GLBA.  All they said

4    was, you know, meet your current obligations under this

5    large federal framework that Congress put in place for

6    colleges and universities.  And if you do that, we'll

7    consider that compliance with the GLBA.

8         THE COURT:  So, Mr. Murphy, one potential

9    distinction in your argument I wanted to point out and

03:44PM 10   hear your response is, it strikes the Court that there

11   is perhaps a difference between what is permissible

12   under the GLBA, perhaps a more restrictive or

13   protective state statute versus what BIPA actually did

14   here.  In other words, you're correct under GLBA

15   doesn't preclude BIPA.  But is it possible that the

16   BIPA statute that the Court is actually interpreting

17   has somehow exempted financial institutions that are

18   required to comply with GLBA whether or not they

19   intended to include colleges and universities or not.

03:45PM 20   Well, what they intended, you know, may not matter if

21   the Court finds that the FTC rule is clear and Elmhurst

22   is, in fact, you know, significantly engaged in

23   financial business or whatever this test is here I'm

24   going to get to in a second.  I mean, the fact that

1    they didn't have to exempt colleges and universities

2    may be a different question as to what the actual

3    exemption in BIPA does in its current form.  Is that a

4    fair distinction?

5         MR. MURPHY:  I think so, your Honor.  And, again,

6    I think we always go back to sort of going back to our

7    original argument.  I don't mean to do that.  But at

8    the end of the day, we're supposed to be interpreting

9    what did the Illinois legislature mean when they

03:47PM 10   drafted that exemption.  You know, the point right is

11   to, you know, give affect to their intent in that

12   regard.  And, certainly, we understand they said

13   financial institutions subject to Title Five of the

14   GLBA, again, we believe when you look at that, the base

15   definition, let's just go to the definition of a

16   financial institution the GLBA.  You know, it says

17   institutions that the business of which is engaging in

18   financial transactions.  It's not do you significantly

19   engage in them, but you engage in some.  It's that's

03:49PM 20   your business.  Your business is engaging in financial

21   activities.  And that's why we think the only entities

22   at that exemption should apply to, and we just don't

23   think it applies to colleges and universities, you

24   know, regardless of what the FTC has said.

1    MR. ALLEN:  Your Honor, may I briefly respond to

2 that?

3    THE COURT:  Hold on.  Yeah.  Go ahead.  Sure.

4    MR. ALLEN:  So I don't know that, you know,

5 plaintiff's counsel is making an assumption about what

6 the legislature intended and perhaps what the

7 legislature did or did not know about the GLBA at the

8 time there was an acting BIPA.  And I don't think there

9 is anything in the record indicating that that

03:50PM 10 assumption is warranted.  Obviously, the GLBA existed

11 at this time.  The relevant regulations existed at this

12 time.  And I don't think there is any reason to assume

13 that the Illinois legislature did not know what it was

14 doing.  And as the Court pointed out previously,

15 Illinois does not exactly have divided government.  So

16 to the extent that the legislature believes that, you

17 know, the exemption speaks too broadly given how the

18 FTC has interpreted the GLBA, we do believe that is a

19 question for the legislature to address if it feels

03:52PM 20 that it needs to.  But the suggestion that the

21 legislature made a mistake in how they drafted this

22 provision and that they must not have realized how the

23 FTC has interpreted it, I don't think there is any

24 reason to assume that that assumption is warranted.

1    MR. MURPHY:  Your Honor, if I might just rebut

2    briefly because on the prior briefing, there was, in

3    fact, evidence we put in there.  If you recall, when

4    the statute, when BIPA was introduced, one of the

5    sponsors were introducing it made specific mention that

6    there was an exemption for banks.  And, again, when we

7    go to, you know, when we go to the GLBA, right, it's

8    about, you know, banks and bank holding companies.

9    That's where the definition comes from, the Bank

03:54PM 10   Holding Act.  And so I would take issue with that.

11        The only other thing, your Honor, quickly I

12   wanted to also that reminded me in responding to their

13   brief, you know, throughout their brief they make

14   mention of things, factual things, that are sort of

15   unrebutted and that we didn't contest.  And, obviously,

16   I know your Honor is aware of this, but obviously, it's

17   our position we didn't get a chance to factually

18   challenge a lot of those things because we run

19   successful in our sort of prior discovery fight.

03:55PM 20   Understand why the Court did that.  But I just wanted

21   to sort of make the record was clear to the extent

22   there were no factual challenges on the scope of

23   exactly what they do do in the financial sector.  It's

24   because of our inability to get discovery in that

1    regard.

2        MR. ALLEN:  Your Honor, if I may, we did not seek

3    or obtain a stay of discovery.  We certainly objected

4    to certain discovery requests because we believed that

5    they were irrelevant.  And the Court, you know,

6    obviously, heard the motion to compel on that.  But as

7    a general matter, plaintiffs did get discovery on this

8    motion.  They did serve requests for both documents and

9    interrogatories as to why Elmhurst believed there was a

03:56PM 10   financial institution and what Elmhurst financial

11   activities were.  They did obtain Elmhurst financials.

12   They did obtain interrogatory responses so the, you

13   know, to the extent that counsel is suggesting there

14   was no opportunity for discovery, that is simply not

15   true.

16       THE COURT:  Let me ask this question.  Let me

17   actually go back to -- let me ask this question.  On

18   the New York State Bar case, a couple things jumped out

19   to me.  One is the informal nature of the proceeding

03:58PM 20   there.  It's distinct from the final rule that was

21   issued in May of 2000.

22           Mr. Murphy, I'm also interested, one thing

23   that jumped out to me is that the question of whether

24   or not attorneys are institutions.  That was, you know,

1    in the Court's reading of it, once the District Court

2    for the District of Columbia kind of decided, well,

3    they are not institutions in the first place.  So that

4    the die was cast.  You would agree that colleges and

5    universities are institutions.

6         MR. MURPHY:  Your Honor, it's funny you bring that

7    up because ironically it depends on what definition you

8    use for institution.  As I was preparing for this

9    argument --

03:59PM 10        THE COURT:  Don't they use a general definition?

11        MR. MURPHY:  Actually, your Honor, in the GLBA in

12   the insurance section, there is actually a definition

13   they use in the insurance section that make reference

14   to corporations, partnerships, and things like that

15   that could actually muddy the waters sort of in that

16   regard.

17        THE COURT:  Let me ask you this, Mr. Murphy.  At

18   page eight of the defendant's reply brief reads as

19   follows: Last full paragraph, plaintiff also errors in

04:01PM 20   asserting Elmhurst has failed to demonstrate that it is

21   subject to the GLBA.  As an initial matter, plaintiff

22   tellingly ignores evidence provided showing that it is,

23   in fact, subject to the GLBA.  In particular, a client

24   (sic) does not respond to Elmhurst evidence that, one,

1    Elmhurst has put in place a compliance program to

2    ensure it is abiding by the GLBA.  That Elmhurst is

3    audited each year for GLBA compliance.  Three, the

4    Department of Education reviews those audits and

5    monitors whether Elmhurst is compliant with the GLBA.

6    And, four, the Department of Education has corresponded

7    with Elmhurst directly regarding Elmhurst GLBA

8    compliance efforts and informed Elmhurst that failure

9    to comply with GLBA would jeopardize its ability to

04:03PM 10   participate in federal student loan programs.  And,

11   five, the Department of Education has sent multiple

12   dear colleague letters to Elmhurst and other

13   universities reminding them that colleges and

14   universities are subject to GLBA under the FTC's May

15   24th, 2000, final order.

16          Defendant maintains that plaintiff has not

17   rebutted this factual evidence.  What's your response

18   to that?

19          MR. MURPHY:  Well, I think some of those issues

04:04PM 20   were addressed in our motion to compel.  That was

21   denied.  Some of them -- and, again, we get back to the

22   issue, I'm not clear, at some points they argue that

23   their actual compliance with the GLBA doesn't matter.

24   It's whether or not they are subject to it or not.  But

1    in this regard, it seems like they are opening the door

2    now to, okay, is it about whether or not they actually

3    do engage in compliance efforts or not?  But generally

4    speaking, I would say on all those things, your Honor,

5    it gets back to the Department of Education does not

6    determine whether or not someone is entitled to be

7    covered by the GLBA or is entitled to the exemption

8    under BIPA.  So I don't know that any of that stuff

9    really matters all that much.  Because, your Honor,

04:06PM 10    actually at the beginning of their brief, they throw in

11    somebody else in addition to the Department of

12    Education which is their outside auditor concluded they

13    were subject to the GLBA.  And I would say their

14    outside auditor has as much impact on that analysis as

15    I do, your Honor.  To me, it's sort of what does the

16    statute say.  The fact that the Department of

17    Education, you know, audits them for things like that,

18    I don't think is of any moment.

19         THE COURT:  Okay.  In the face of the following,

04:07PM 20    I've got section 1425C of BIPA provides nothing in this

21    Act shall be deemed to apply in any manner to a

22    financial institution or an affiliate of a financial

23    institution that is subject to Title Five of the

24    federal Gramm-Leach-Bliley Act, 1999, and rules

1    promulgated thereunder.

2         So the question becomes is Elmhurst

3    university a financial institution.  The FTC, which was

4    Congress promulgated will make an authority to the FTC

5    with respect to GLBA.  And on May 24th, 2000, the FTC

6    said in a final rule, the commission disagrees with

7    those commentators who suggest that colleges and

8    universities are not financial institutions.  Many, if

9    not all, such institutions appear to be significantly

04:09PM 10   engaged in lending funds to customers.

11        The question then becomes how persuasive is

12   the rule.  And if it is persuasive, is Elmhurst, in

13   fact, a financial institution itself.  The Court finds

14   the nature of the rule, the fact that it went through

15   formal notice and comment rule making, is persuasive.

16   The Court finds that the New York State Bar Association

17   case is distinguishable in that it was informal rule

18   making, moreover, the attorneys nature of it.  The

19   nature of the issue in front of the D.C. District Court

04:10PM 20   was distinct and not necessarily as analogous as one

21   would hope.  Moreover, the Court finds that the

22   evidence establishes free and clear of doubt, at least

23   in this Court's mind, that Elmhurst University itself

24   is a financial institution.  It's important to note

1    that plaintiff's counsel's observations about what the

2    inner workings, I'm sorry, the inner relatedness of

3    GLBA and BIPA may, in fact, be able to coexist.

4    Nevertheless, when the Court interprets 1425C of BIPA,

5    as the Court just recited, the Court finds that

6    Elmhurst University is, in fact, exempt, is a financial

7    institution.  And so the Court is going to go ahead and

8    grant the motion to dismiss because it is a financial

9    institution for the reasons I've indicated.

04:12PM 10             And, look, I understand that another Court

11   may disagree.  And we may just have to get clarity on

12   that.  But based on the record before it, based on the

13   plain language of the Statute, not going to the

14   legislative history, but just looking at the plain

15   language of 1425C, the Court finds that Elmhurst

16   University is a financial institution.  And as a

17   result, they are exempt in any manner from BIPA

18   compliance.

19             So for those reasons, I'm going to grant the

04:12PM 20   motion to dismiss.  I will obviously entertain a short

21   date if the parties would like it.  I will enter any

22   language that the parties would like in this order

23   today as well.  And as the Court said early on, this

24   one may, you know, other minds may disagree, and I

1    certainly appreciate that.  This was brought pursuant

2    to a 619.  A 619 admits the legal sufficiency of the

3    complaint and presumes a valid cause of action but

4    raises defects, defenses, or other affirmative matters.

5    And the Court finds that this is an affirmative matter.

6            The Court further finds that no meaningful

7    fact question exists on whether or not Elmhurst itself

8    is a financial institution given the record put before

9    the Court.  Again, it's conceivable another Court could

04:14PM 10    disagree.  But I think the plain language of the 1425C

11    makes clear that colleges and universities, whether the

12    legislature intended that or not in its current form,

13    1425C would apply to most colleges and universities.

14    And at the least, it would apply to Elmhurst in this

15    case.

16            So for those reasons, the motion is granted.

17    How would you parties like to proceed?

18        MR. ALLEN:  Your Honor, just a quick question of

19    clarification.  I presume given the nature of the

04:15PM 20    Court's ruling that the dismissal is with prejudice but

21    I just wanted to confirm that.

22        THE COURT:  With.  That in certain respects, you

23    know, or, I mean, that closes the case.  Obviously, if

24    the parties wish to bring some kind of motion to

1    reconsider, they can.  But this would be a final and

2    appealable order.

3         MR. MURPHY:  Your Honor, I promise not to file a

4    motion for reconsideration because I don't think I'll

5    be able to change your mind.

6         THE COURT:  I appreciate it.

7              Well, let me just say, I appreciate the

8    parties advocacy here.  The thorny (sic) issues I think

9    plaintiff raises some very interesting and challenging

04:16PM 10   questions.  Nevertheless, when I look at this, when the

11   Court looks at this, these are essentially questions of

12   law for a Court to decide and they have to be decided.

13   And, again, another Court may disagree, and I'll

14   certainly, you know, revisit these issues when and if

15   appropriate.  But the Court doing its level best finds,

16   for the reasons I've indicated, that Elmhurst's motion

17   is dismissed.  Motion is granted, and the dismissal

18   will be with prejudice.

19              Mr. Allen, will you go ahead and prepare the

04:18PM 20   order?

21        MR. ALLEN:  Yes, your Honor.

22        THE COURT:  Okay.  Thank you very much.

23        MR. ALLEN:  Thank you, your Honor.

24        MR. MURPHY:  Thank you, your Honor.

```
 1            IN THE CIRCUIT COURT OF THE 18TH JUDICIAL CIRCUIT

 2                       DU PAGE COUNTY, ILLINOIS

 3

 4

 5            I, TRINA M. SPIZZIRRI, hereby certify that I

 6    am a Certified Shorthand Official Court Reporter

 7    assigned to transcribe the Zoom videoconference

 8    recording of proceedings had of the above-entitled

 9    cause.

10            I further certify that the foregoing,

11    consisting of Pages 1 to 30, inclusive, is a true and

12    accurate transcript completed to the best of my

13    ability, based upon the quality of the audio recording.

14

15

16            _____
                        Trina Spizzirri

17                    Official Court Reporter
              Eighteenth Judicial Circuit of Illinois
18                        DuPage County

19

20

21

22

23

24
```